We will hear argument in the United States v. Lloyd. Mr. Gesson, when you're ready. May it please the court. My name is Jesse Gesson from the Office of the Federal Public Defender. I represent Ashburn Lloyd. Permission to reserve three minutes for rebuttal. Grant. There are three issues that Mr. Lloyd submitted to the court for review. The first issue is the admission of hearsay statements, collectively called the hearsay evidence throughout Mr. Lloyd's filings. Federal Rule of Criminal Procedure 32.1b to c affords a defendant a right to confront a hearsay declarant during a supervised release hearing. That right is grounded in the due process clause. And the test that's elicited in Rule 32.1 is a balancing test. The court, once raised by the defendant as it was here, must balance the defendant's right to confront a witness, a hearsay declarant, versus the government's rationale for not bringing in a live witness. In doing so, the court looks at three different circumstances. The prejudice to the defendant, the reliability of the evidence, and the government's reason for not bringing the declarant to court that day. In this case, there was what we call a violation report, or what I've called a violation report, which included a number of statements from, to this day, an unknown hearsay declarant. The statements concerned the nature of certain criminal activity alleged to have been committed by Mr. Lloyd, including aggravated domestic assault. Well, wouldn't your friend say that they were statements of the defendant to Pinto? Well, Your Honor, they may say that. They may allege that. But the reality is that it may have also been his girlfriend who said it. It may have been an unknown neighbor who witnessed the events. All we know is that it came from a sheriff's report. We don't know who the sheriff was who took the report. We don't know who the declarant was to the sheriff. And we certainly don't know who Mr. Pinto talked to at the sheriff's office to receive the report and what outside information he received from the sheriff's office. But, you know, you never really claimed that any of the specific allegations in the violations report were, in fact, erroneous. No, Your Honor. I mean, there's no allegation here that the facts on the table are not true. Well, Your Honor, the government has the burden by a preponderance of the evidence. And the reason why the defendant is afforded a right to cross-examine is because it tests the adversarial waters that is being produced by the witness. On your confrontation argument, we're all into that very much so, especially by recent opinion of Supreme Court. But you dealt with that footnote in your brief. Is that even before us when there's no real argument on that? Well, Your Honor, I argue the confrontation clause as a footnote because every other circuit besides for this circuit has decided that the confrontation clause does not apply in supervised release hearings. And I believe that's because there's a backdrop. And the backdrop is Federal Rule of Criminal Procedure 32.1, which provides – Which you didn't raise below, but you really are invoking here. Well, Your Honor, I – And I don't know that you had to raise it below in a – In a footnote, does it – I don't think – I don't talk to my brother and sister here, but footnote doesn't really put me on notice as to what is going to be argued or what I have to decide. Your Honor, let me explain it this way. During the supervised release hearing, as soon as the evidence started coming in, I said, here's a confrontation clause. You objected. You objected. You objected continually. I objected, but I objected under the spirit of 32.1. I didn't mention – Your friend kept saying it's not hearsay. 32.1. I didn't mention 32.1. You just didn't have whatever name. You didn't have it big and old. That's right. So when it came time to come to appeal, I realized, recognizing that the – every other circuit or most other circuits have addressed this issue square on and said the confrontation clause does not apply to supervised release hearings. I did give due deference to other courts of appeals and stuck with the main argument, which is 32.1 was violated here and not the confrontation clause. However, I did raise it as an alternative to 32.1, and I did – You're predicting we won't take a different approach than all the other circuits that have ruled, and you want to focus on the due process-slash-hearsay aspects of it. I recognize this court has limited judicial resources, and instead of spending a significant amount of time arguing something that nine other circuits, or I believe eight other circuits, has gone against, I figured I would spend time on what is statutorily codified, which is the balancing test, as well as the 32.1 right to confront. I asked you a question before, and then I promise you I will not – I will be very quiet so everybody can make their argument. Has he started to serve his term – the term of imprisonment that was imposed for the violation? He's out. He's finished. He was released 11 days ago. Oh, okay. Yeah, and I – So has the case moved? No, it's not moved because we're talking about liberty of interest. We're talking about the reality that this is – Yes, Your Honor, but this is something that can happen continually, so it's an exception to the mootness doctrine. There's a case to say it's not moot if it's condemned. It's a continuing probability – there's a continuing probability that this will arise again and again. It's like the – Well, if he gets arrested – Well, but that – It would be against him if he gets arrested. Capable of repetition but evading review, that typically occurs in the First Amendment and other contexts. I mean he suffered all the harm he can possibly suffer as a result of this judge's decision. Actually not, Your Honor. He was given one year of supervised release. If the court sides with the appellant, then his supervised release will be – Will be reduced. Will be reduced, and he'll be actually done with supervised release, and he'll be done with his sentence. But if we agree with you on your argument in the merits, then he conceivably served eight months too long. That's right. Because he'd be in the lower guideline range of four to ten months on the grade B violation, which the government now concedes that the gun possession was. Correct. And if we find the other one, the aggravated – the battering of – the assault. If we find that is hearsay and we – it shouldn't have been considered, we're into the four to ten months, correct? Correct. And he served eight months too long. Did you seek a stay? Did I seek a stay? No, Your Honor. I did not seek a stay, and that was probably indeligent on my part. I should have seeked a stay. I actually sought to get oral argument done quicker. I think I filed a motion, but I probably should have sought a stay, and I recognize – In any event, even if – even if his sentence had already been served, if he ever got arrested again, it could count against him that he violated supervised release. Absolutely. So it pays for him to not have that on his record because it could count against him if he's ever arrested. He was violated for something that one could argue you are arguing has not been proved. That's right. That's right. He was violated for – Don't stop me. Well, he was violated for aggravated domestic violence, which doesn't exist in the Florida statutes, by the way. We know what you're talking about, though. Yeah. Well, we do, but I'm still to this day unsure if it was domestic battery or domestic assault or a combination of both. But, I mean, what we have here, judges, is a situation where the court wholesale adopted the probation officer's reports without any, any testing of what they were actually saying in the reports. And I understand that judicial economy is – has to be reserved in situations of supervised release hearings because we hear them all the time in the federal courts, and our courts are swamped with them. And if they had to bring in witnesses every single time – but doing a limited balloting test at – when the spirit, if not the law, is raised, then I don't think that that is an extensive amount of judicial resource that's going to be expended by the district court. And if we have to move – if we have to have a continuance of a week or two to allow the government to bring in the live witness – Yeah, but as a precursor, a precedent, or a prerequisite, I should say, for your argument, don't you have to show you can harm in some way as the arguments go in evidence by hearsay evidence in this case? And the bottom line here is you do not dispute the facts, the hearsay facts which were elicited, so that what you're saying to us is I'm not disputing these facts, although the facts were not – were hearsay and were improperly accepted. Bring in the live witnesses, and I know you're going to prove the exact same thing through live witnesses. So you have a situation in a superboss release case where you're telling us that there was a violation of hearsay. Unquestionably, there was hearsay. But it's totally harmless because you have not made any allegations that this hearsay is untrue. In fact, the record seems to bear out that this is factual. Your Honor, of course the defendant asserts that he did not commit aggravated domestic violence because the state conviction for which he served 28 days was for gun possession. It never – he was never convicted of aggravated domestic violence, and the whole – He doesn't have to be convicted of it. I don't think that was Judge Campbell's question. Well, Your Honor, during the hearing, I disputed it through my objections to the admission of the testimony. I don't believe – You don't need to put your client on the stand to dispute the accuracy of that. I would hope not because at times that could be a violation of the Fifth Amendment. And the burden remains on the government. Absolutely, Your Honor. Well, you objected because it was hearsay, not because it was not true. Well, Your Honor, if I got up – if every time that a witness said something in advancement of the government's burden of proof and said, well, Judge, I object because that's hearsay and it's untrue, it would be every single time that I would be – Well, if I were the trial judge, I'd tell you to stop testifying. You're not a witness. You're counsel. Absolutely, Judge. You're not allowed to tell me that it's not true. You're not a witness. You're the lawyer. But the question is how could it be – it's clearly hearsay, but why is it a harmless hearsay given that there's really no dispute as to the facts that he testified to? Well, Your Honor, again – I'm sorry. Oh, I'm sorry. Again, I respectfully submit to the court that the government has the burden of proof. And as the government elicits its burden of proof, my objections to the government's admission of the testimony is implicitly disputing the factual assertions therein. You're not disputing the gun possession because the plain guilty is that, and we have the Florence judgment. That's right, and we have the – That's a grade B. That's a grade B. I'm really concerned here about the grade A, and if the government is going to tell me they were going to press the grade A, I was going to be all over them because now he's out of jail. So I don't know what the point is. Well, like I said, we still have continuing consequences of it, and not to mention he was being held before trial. We're not able to get him out on bail. They denied that, so a seeking of state would have probably kept him in jail anyway. So I'll – I see my time is up. I'll let the government answer. I have one question before you sit down about this restitution, which seems to be a total mess. When he was sentenced, the – granted the judge found – the court found Jordan several liability as to restitution, but they found he was only liable for $12,623. And then when he booked here, did the revocation and imposed sentence, he reimposed restitution in the amount of, what, $68,000 – $68,870. It makes no sense to me. I don't know how to put – He said that's the amount that remains underpaid for what he served. But meanwhile, I guess he had paid $7,000 of the $12,000. Maybe him or somebody else. Or somebody, but I don't know where the judge can reimpose – now do a new sentence of restitution of $68,000. Yeah, but what's the original sentence? Clearly a joint liability. Clearly there – But he was limited to his specific amount. That's what's unclear, was $12,000. He was limited to his amount, but the sentence itself said it was a joint liability. That's true, Judge, but I also have to respectfully contend that Judge Berry is onto something here, which is that originally the judge apportioned it out, $12,000, although it kept as a backdrop joint and several liabilities. So it's almost as if there was a secondary position of the judge, which is, okay, if it doesn't get paid, there's joint and several liability, but you are responsible for $12,000. But then Judge Sanchez didn't mix the backdrop, mixed the apples and the oranges, and just gave him all of what was remaining. I don't know who paid the $7,000, but I see my time is up. I'm going to defer to the government. Thank you. Good morning, Your Honor. I'm Jason Cohen on behalf of the United States, which is the appellee in this case. I may please the court. I think I'll try to address the restitution issue first since that was on the court's mind right before I took – right before I stood up. I have to concede that the judgment – the original judgment is not a picture of clarity. But the way the judgment reads, I think, and it's on Appendix 9, the court stated that the $12,643 shall be paid by the defendant. But it found that the total loss of restitution was the $76,455 and that the restitution was joint and several liability with the co-defendants, each defendant liable to pay the full amount. So given that statement, I think it was reasonable of the court here, especially considering the guideline policy statement in 7B1.3 that any restitution previously imposed in connection with the sentence that remains unpaid or unserved at the time of replication shall be ordered to be paid. Yeah, but he also described it as a fine. I mean it's very confusing. When he – do you reimpose restitution when you violate someone in supervised release? I was a district court judge for 16 years. I don't remember ever redoing restitution when you do a supervised release violation. I think that this – in this case, I don't think the judge was trying to redo restitution. Why did he even deal with restitution? We're not here to argue restitution, but this is very unclear, and I think if it goes back, at least somebody should clear it up. It can almost be read as a reminder that you're still on the hook for what was unpaid from when we previously imposed judgment. I agree. I don't think the judge was instituting anything new here. I think he was just – the probation office reported that this amount, the $68,000-some-odd remained unpaid. The judge was saying that – No, if he was doing something new, if he was now discovering that what he had done in the initial judgment was wrong or unclear, and he's using the supervised – this is speculation – supervised release violation to clear it up. Well, the only reason he was able to clear it up, I guess, was because of the grade A violation. If the grade A violation can't stand because of the hearsay problem here, one can say he got eight months too long and too much restitution once it was cleared up. I don't know. I'm just speculating. There has to be some relief somewhere for eight months that should not necessarily have been served. Now, how would you deal with that? Would you agree that if we find a hearsay violation, he served eight months too much? No, Your Honor. Why not? Here's the situation. I think that it would still be within the court's discretion on what to sentence. But it would be an upward variance. We'd have to remand for procedural unreasonableness and give the district judge another chance. I mean, the district judge could go climb the ladder up again, but would we not have to just summarily remand it, vacate and remand for procedural unreasonableness? Your Honor, I don't think the court should vacate in this case. I don't think that's appropriate. How can we not? It's hearsay. If we say he should have had a right to challenge the grade A violation, now that you've conceded there's only one grade A violation, I wouldn't have had a problem if the gun possession was a grade A, which is what you had argued below. But we only have this domestic assault thing now as the grade A. And if we say the defense should have been allowed to cross-examine Pinto or somebody, and he wasn't, then he served eight months too long, you know, arguendo, we could remand. And the judge can say, well, I would have upward departed to 18 months, and there you go. But I don't see how you can say now what you just said. I think, Your Honor, at most the court could remand it. But I don't think vacating the revocation would be appropriate because I think the record shows— Not the revocation. Not the revocation. The term. The 18 months. Let me show you all my cards and get your candid response. From time to time we read briefs, and I can't speak for my colleagues, but I read briefs, and sometimes, one out of ten, you say, ah, I know what happened here. This is one of these cases for me. Tell me if my instincts are right or if I'm wrong. The district judge let in double hearsay on this domestic issue. It was a tree falling in the forest, so everyone thought, because everybody was laboring under the misimpression that the firearms violation was a Grade A violation. Once you've got Mr. Lloyd on a Grade A violation, you have your guidelines range in place, and regardless of the double hearsay, it's a tree falling in the forest. We all now know on appeal that that was a misimpression that everyone was laboring under, and all of a sudden the domestic charge, the Grade A charge, takes on this very important significance because the guidelines range for that violation is a lot more substantial than the guidelines range for the other violation. Is that what happened here, or did something else happen? I think, Your Honor, I can't argue with your interpretation of what happened here, and I think, you know, my interpretation of it, you know, in retrospect, is that the hearsay, even though the judge didn't do the balancing test and Rule 32.1 was not, as you said, explicitly invoked, but even though it wasn't explicitly invoked, it would have been better practice to do that balancing test and to find that... Not only better practice, required. Our case law requires it. Well, we haven't spoken precedentially. That's one thing that one of the reasons I think we're all having it argued is we have the Walls decision, right, that you're both familiar with, but that's an NPO, right? Yes, unpublished. But all the other circuits talk about it. It seems to be well established throughout other courts of appeals that this balancing test must be undergone, right? That's correct, Your Honor. So I can't argue that it shouldn't have been done. It definitely should have been done. But I think what the court can say here is that the court can say that implicitly the court found that the evidence had sufficient indicia of reliability. Well, I'm more comfortable, Senator, back in letting the judge do that explicitly rather than us trying to divine the judge's implicit intent. He would have to, well, he would really, well, I guess it's different since he's out. I think the one caveat I'd give to Judge Hardiman's spin on the case is that his attorney to the district court was arguing grade B for the gun possession, and the court didn't accept it, and you challenged him. I would have no problem, in fact, I was going to come after you at oral argument before I found out he was out, had served his sentence, and say you are not going to press the grade A violation, are you? Because there's really no challenge to the grade B gun possession violation. Supervised release was properly revoked for the gun possession violation conviction. And the only question, the only thing would be to remand for resentencing in the guideline range of 4 to 10. That would be correct, yes, Your Honor. If the court doesn't accept that the argument that was put forth in our paper is that they found the implicit intent. If we were to send this back for whatever reason, are you seriously arguing that the district court should now determine that there should be some kind of a hearing on the grade A violation? I would suspect, Your Honor, that the government and the defense could probably come up with a recommended guideline range. I would think the government would say, no, he's already served whatever term, and the interests of justice require that we don't press this any further, the grade A violation. Without being the decision maker in the case, I would suspect that that's what would happen. I would understand. I understand. All right. I think unless the court has any other questions, nothing to add. Thank you. Let me begin by talking about my client's release. This is a judge from Philadelphia who came down here. If we had sought a stay and his bail as he was detained pending the supervised release hearing, he would still be in prison awaiting this appeal. He would still have to wait another couple of months until Judge Sanchez comes back again at the end of May. So the fact that he's released was actually a tactical decision that we weren't going to be able to get to him quicker than 18 months, considering the nature of the appeals process, considering the nature of Judge Sanchez being in Philadelphia, considering the nature of this case. Judge Gomez couldn't hear it. I don't believe Judge Finch could hear it. So there were certain considerations that were made. None of that impairs your ability to seek a stay from this court in seeking bail pending an appeal though, right? That's true, Your Honor. That's true. And in light of – I'm not telling you what to do. I was just curious before because, you know, these cases I think, you know, the wheels of justice move slowly sometimes. God hope it doesn't move seven years slowly. But, you know, even on our court, we try to be expeditious, but usually things take at least a year or two. And we're mindful of these cases where someone loses their liberty for a year or two and talk about a Pyrrhic victory. If the defendant is able to prevail, what good is it if they've lost their liberty for that year or two? I understand, Your Honor. And the court makes a good point as to the bail issue and seeking bail from the Third Circuit. But considering the nature of the case, the aggravated domestic violence on a pregnant woman and whatnot, the court is exactly right. Nothing prevented us from prevailing a stay, and that was indeligent of us. What would you have us do? I mean, seriously, what relief are you seeking from us? I'm seeking – the defendant is seeking – the appellant is seeking the relief that the court was discussing in questioning with the government, which is remand and re-sentencing – for re-sentencing. But do you re-sentence when he's served the sentence? Well, Judge Barry, you made an interesting point about the restitution. There's also the supervised release that he's currently serving because of this sentence. He was released 11 days ago, but for the next 342 days he's going to be – 344 days – he's going to be on supervised release. You would want him to be re-sentenced on the Grade B violation? Yes, Judge Barry. Which would mean we'd have to find that the Grade A violation was incorrectly found, right? Yes. And the sentence, therefore, imposed was wrong, right? Yes. So re-sentenced on the Grade B. Then you want reconsideration, I suppose, of the one-year term of supervised release? Yes. At which point you'll throw yourself in the mercy of the district court saying, I already served eight months too long, so can you give me a break on this one? And then you want the restitution cleaned up. Absolutely. More elegant word – way of putting it. Absolutely. And that's particular to the defendant, but in every case there's more at stake, Judge. And in this case what's at stake is, as Judge Hardiman noted, the Third Circuit hasn't spoke on various issues that are brought up in the appeal. And not only that, but there's what I see oftentimes going on in the court, which is that during supervised release revocation hearings, there's not a full consideration of the applicable rules, especially when it requires time. And I think that's a big thing is the time factor. And I understand the district courts are clogged with supervised release revocation hearings, but the defendant has to have a modicum of due process, and that's what we lost here. That's what slipped through the cracks here. And I think that that is what the court should keep in mind outside of the individual interests of Mr. Lloyd. Can we deal with the restitution at all? I mean, that's something that we could all – should we really – should the district judge have dealt with it? I mean, to me, the only thing that was properly before was a supervised release, and why even speak to the restitution? I agree, Judge Cowen. I believe that the restitution was improperly imposed and that during resentencing, there should be a direction that restitution was in the original judgment. The original judgment speaks for itself, and to reimpose it I don't believe is proper. So we should only actually just vacate the restitution, and your position is we should revoke it back to the district court for a hearing and balancing, which was never done in the first place? Correct. And technically, the government could try to prove up that domestic again. Absolutely. But presumably they didn't want to take the time and expense to fly someone in from Duval County, Florida, for the initial. Or maybe they didn't know who the hearsay declarant was. That's another possibility. Back to what I originally asked. The facts that you didn't dispute, though, did you? Judge, did I specifically say that's not true? No, Judge, I didn't. But I respectfully submit, Judge Cowen, that when I objected and I said confrontation clause, hearsay clause, I was getting to the point, getting to the heart of the matter, which is I don't know who's saying this, and I'm disputing not only how it's coming in, but I'm disputing what they're saying. I see my time is up. It's been a pleasure. Thank you. Thank you very much. Well argued. We'll take the case under advisement.